UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DAVID TAYLOR, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-427 JD |
| AM GENERAL LLC, | ) |
| Defendant. | ) |

## OPINION AND ORDER

David Taylor has worked in various manufacturing positions for AM General since 2001. After being off work for about a year to recover from a 2014 spinal surgery, Mr. Taylor remained off work for another thirteen months as he underwent a series of surgeries on both hands and shoulders. Over that period, his doctors imposed various sets of restrictions that AM General said prevented him from doing his job or any other available jobs. AM General thus did not allow him to return to work until November 2016, when doctors cleared him to return to regular work. Mr. Taylor believes, though, that he could have worked during that period despite his restrictions. He claims that, by keeping him off work during that period, AM General violated his rights under the Americans with Disabilities Act and retaliated against him for his complaint of age and disability discrimination. AM General moved for summary judgment on those claims. As discussed below, the Court finds that Mr. Taylor has not offered evidence from which a jury could find in his favor on those claims, so the Court grants the motion.

## I. FACTUAL BACKGROUND

AM General is a manufacturer that primarily produces military vehicles. The nature of the products it produces often requires employees to be able to lift, move, and assemble heavy objects. David Taylor began working for AM General in November 2001 and is still an AM

General employee. In 2014, Mr. Taylor was working in the "paint, dip, and bake utility" position. His tasks in that position included working with and mixing heavy paint buckets, placing heavy parts in a sand blasting machine, guiding machines that dipped parts into paint, unhooking and reattaching parts for dipping, and moving vehicle wheels off the assembly line.

In November 2014, Mr. Taylor began what would become an extended medical leave, when he underwent cervical spine surgery. About a year later, in October 2015, his doctor cleared him of restrictions and allowed him to return to full duty. Due to the length of his leave, though, AM General required to Mr. Taylor to undergo an evaluation at IU Health Occupational Services, AM General's workers' compensation provider. On October 19, 2015, IU Health cleared Mr. Taylor to return to work but with various restrictions, including that he could not push, pull, or lift over 20 pounds frequently, or 25 pounds occasionally, could not work with high speed or cutting tools or machinery, and could not operate a motor vehicle or work on ladders or unprotected heights.[1] Mr. Taylor did not return to work at that time, but AM General paid him in full from then until he underwent carpal tunnel surgery on his right hand on October 29, 2015. After that surgery, Mr. Taylor's doctor allowed him to return to work so long as he did not use his right hand. A week later, the restrictions were modified to include no overhead work, no lifting more than 20 pounds, and no repetitive gripping or forceful manipulation with his hands.

In November 2015, AM General implemented a new policy on employees with physical restrictions. AM General asserts that its policy was that it would offer reasonable accommodations that would allow an employee to perform all of the essential functions of a

---

[1] Mr. Taylor testified that he disagreed with some of the restrictions or didn't understand why they were imposed, but there is no dispute that the doctors in fact offered each of the restrictions in question.

position, but that it would not create light duty positions or allow employees to return to work if they could not perform all of the essential functions. Mr. Taylor asserts, however, that the policy swept more broadly, and that AM General did not allow any employees with restrictions to work. In either event, AM General stated that it was unable to accommodate Mr. Taylor's restrictions, so he remained off work due to his restrictions.

In January 2016, Mr. Taylor underwent carpal tunnel surgery on his left hand, after which his doctor restricted him to being "off work." As Mr. Taylor recovered from that surgery, his doctor wrote that he could return to regular work effective March 28, 2016. Mr. Taylor thus underwent a fit-for-duty evaluation at IU Health, after which the doctor wrote that Mr. Taylor could perform "no work with arms at shoulder height or above" and could not lift, push, or pull more than 20 pounds. AM General again stated that it could not accommodate these restrictions, so he remained off work. In May 2016, Mr. Taylor had surgery on his left shoulder, after which his doctor restricted him to no work with his left arm. In July, that restriction was modified to no lifting more than 20 pounds and no overhead work. On August 11, 2016, Mr. Taylor then had surgery on his right shoulder, after which his doctor again placed him "off work." In September, the restrictions were modified to no lifting over 20 pounds and no overhead work, which was modified in October to no lifting over 20 pounds and no overhead work with the right arm. Finally, in November 2016, Mr. Taylor was cleared to return to regular work, and he returned to work at the plant.

AM General contends that it was unable to accommodate Mr. Taylor's various restrictions from October 2015 through November 2016, and that he could not have performed any available jobs within those restrictions, thus requiring him to remain off work. Mr. Taylor contends, however, that he was still able to do his job or various other jobs within those

restrictions, and that he should have been allowed to work during that period. He had also filed an EEOC charge on April 14, 2016, alleging that AM General was discriminating against him on the basis of his age and disability by keeping him off work. He thus filed this action, claiming that AM General violated his rights by refusing to allow him to work during that period. Discovery has closed, and AM General moved for summary judgment.

## II. STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III. DISCUSSION

Mr. Taylor asserts claims under the Americans with Disabilities Act and the Age Discrimination in Employment Act. His claims each arise out of AM General's decision not to

allow him to return work between October 2015 and November 2016. Mr. Taylor's complaint alleged that AM General failed to accommodate his disability as required by the ADA, discriminated against him on the basis of his age and disability, and retaliated against him for filing an EEOC charge alleging age and disability discrimination. AM General moved for summary judgment on all claims. In response, Mr. Taylor expressly declined to pursue his age discrimination claim, so the Court grants summary judgment on that claim. Mr. Taylor defends his claims for failure to accommodate, disability discrimination, and retaliation, though, so the Court considers each in turn.

### A. Failure to Accommodate

The Court begins with Mr. Taylor's failure to accommodate claim. Mr. Taylor argues that AM General adopted a "100 percent healed" policy, under which AM General refused to accommodate any restrictions and would not allow employees to return to work until they were cleared to work without restrictions. He argues that this policy violates the ADA's requirement that employers engage in the interactive process and offer reasonable accommodations to allow employees to complete the essential functions of their positions. Mr. Taylor contends that AM General violated these obligations by refusing to allow him to return to work due to his restrictions. He argues that he was not disabled, but that AM General regarded him as disabled, and that he could have performed a job if given the chance.

This claim fails, however, because it is based on an erroneous legal premise. The ADA provides three ways in which an individual can qualify as "disabled": (A) having a physical or mental impairment that substantially limits one or more of the major life activities; (B) having a record of such an impairment; or (C) being "regarded as" having such an impairment. 42 U.S.C. § 12102(1); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). Mr. Taylor pursues

only the third prong, arguing that he was not in fact disabled but was "regarded as" disabled.[2] As a matter of law, though, an employer "is not required to provide a reasonable accommodation to an individual who meets the definition of disability *solely* under the 'regarded as' prong[.]" 29 C.F.R. § 1630.2(o)(4) (emphasis added); *see also Majors v. Gen'l Elec. Co.*, 714 F.3d 527, 535 n.4 (7th Cir. 2013) ("The amendments to the ADA clarified that employers needn't provide reasonable accommodation to a 'regarded as' disabled individual."); 42 U.S.C. § 12201(h) (stating that an employer "need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in section 12101(1) . . . solely under subparagraph (C)"). Because Mr. Taylor proceeded solely under the "regarded as" prong, AM General had no duty to provide him reasonable accommodations,[3] so the Court grants summary judgment on this claim.

**B.    Disability Discrimination**

Mr. Taylor next asserts a claim for disability discrimination. His theory for this claim is the same as for his failure-to-accommodate claim: that he was able to work despite his restrictions, but AM General refused to allow him to work because of those restrictions, pursuant to its "100 percent healed" policy. The ADA makes it unlawful to discriminate "against a qualified individual on the basis of disability" in regard to the individual's employment. 42 U.S.C. § 12112(a). To prevail on a claim for disability discrimination, a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with

---

[2] Mr. Taylor suggests in passing that he could meet all three prongs for qualifying as disabled, but his brief reflects that he deliberately chose to proceed solely on the "regarded as" theory. [DE 34 p. 4 ("While a reasonable jury could conclude that Plaintiff met the definition [of disability] under all three prongs, it is the 'regarded as' prong that Plaintiff proceeds under.")]. The passing reference to the other prongs is insufficient to preserve an argument on those grounds.

[3] As noted below, Mr. Taylor does not argue that any accommodations were necessary; his argument is that he could have done his job as-is, notwithstanding his restrictions, but that AM General still kept him off work because of those restrictions. Thus, this theory is better framed as a claim for disability discrimination anyway.

6

or without reasonable accommodation; and (3) he suffered an adverse job action because of his disability. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017).

There is no dispute that Mr. Taylor was held out of work because of his restrictions. And if he was able to perform the essential functions of his job but was still held out of work because of those restrictions, he would be "regarded as" disabled. 29 C.F.R. § 1630.2(*l*)(1) (stating that an individual is "regarded as" disabled if the individual "is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity"). The primary question is therefore whether Mr. Taylor is a "qualified individual," meaning whether, despite his limitations, Mr. Taylor was still able to perform the essential functions of the job he held or desired.[4] 42 U.S.C. § 12111(8).

Mr. Taylor argues that he could have performed either his prior position or various other positions in AM General's plants despite his limitations. As to the other positions, though, Mr. Taylor cites no evidence that any of those positions were ever open at the relevant time. An employer need not bump other employees from their positions in order to find a position for a disabled employee, so a plaintiff has to show that any alternate positions were available.[5] *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015) (noting that an "employer may be obligated to reassign a disabled employee, but only to vacant positions"). Mr. Taylor admitted during his deposition that he did not know whether any of the other jobs he mentioned were ever

---

[4] A person is a qualified individual if he can perform the essential functions of a job "with or without reasonable accommodation," 42 U.S.C. § 12111(8), but Mr. Taylor does not argue that any accommodations would have affected his ability to do the jobs, so the Court need not address that issue.

[5] Another way of framing this issue is as one of causation—if a position was not available, then it would not have been the plaintiff's restrictions that prevented the plaintiff from receiving that position.

available, [DE 34-2 p. 32, 36], and he cited no other evidence on that point. Instead, he argues that AM General failed to identify which positions were available to him. But as the party that would bear the burden of proof at trial on this issue, Mr. Taylor has the burden to identify evidence that there was an open position that he could have performed. *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015) ("It is the employee's burden to demonstrate that a vacant position exists."). Even if Mr. Taylor was not told at the time what other positions were available, he has now had a chance to conduct discovery to gather any evidence he needed to support his claims. Having failed to provide evidence that any other positions at the plant were available when his various restrictions were imposed, Mr. Taylor cannot be a "qualified individual" because of his ability to perform those other positions.

The question therefore becomes whether Mr. Taylor could have performed the job he had prior to when he began his disability leave—the paint, dip, and bake utility position. AM General argues that the essential functions of that position included working with and mixing heavy paint buckets, placing heavy parts in a sand blasting machine, guiding machines that dipped parts into paint, unhooking and reattaching parts for dipping, and moving vehicle wheels off the assembly line. It argues that these functions required frequent lifting of more than 20 pounds, repetitive gripping with both hands, and regular work at or above should-height. It further argues that those requirements were incompatible with any of the various sets of restrictions that were in effect for Mr. Taylor over the 13-month period in question, so he was not able to perform his job during that period. In response, Mr. Taylor does not dispute whether any of the functions AM General identified were essential functions of the position. He argues only that he could have performed those functions within the restrictions imposed by the doctors.

In support of that argument, Mr. Taylor relies almost entirely on his testimony that he believed he could have performed his job within a particular set of restrictions. When asked if he could have performed his job, Mr. Taylor responded, "I can't speculate because I don't know. I never got that opportunity. In my opinion, absolutely." [DE 34-2 p. 12]. That answer, however, came in response to a question as to whether Mr. Taylor could have performed his job within the particular set of restrictions imposed on October 19, 2015, at the beginning of the period at issue. *Id.* (asking if Mr. Taylor could perform his job within the "restrictions listed on Exhibit 3," which were the restrictions imposed by IU Health Occupational Services on October 19, 2015 [DE 32-4 p. 19–22]). Those restrictions included restrictions against frequently moving over 20 pounds, using high speed or cutting tools or machinery, and working on ladders or at unprotected heights. [DE 32-4 p. 21–22]. However, those restrictions were only in effect for ten days, during which Mr. Taylor was paid in full, *id.* at 24, so he did not experience an adverse action in that period.

After that, Mr. Taylor underwent a series of surgeries and had various different sets of restrictions imposed, all of which included restrictions beyond those imposed on October 19. Mr. Taylor has not developed an argument that he could have performed his job within those various other restrictions, though. For example, on October 29, 2015, Mr. Taylor underwent carpal tunnel surgery on his right hand, after which he was restricted to "no work with right hand." [DE 32-4 p. 63 (dep. ex. 4)]. Mr. Taylor does not argue that he could have done his job with one hand. He argues that he could have done *other* jobs with that restriction, but as already discussed he failed to show those jobs were available. A week later, on November 9, 2015, his restrictions were modified to: "No overhead work or lif[t]ing more than 20 lbs both upper extremities. No repetitive gripping or forceful manipulation both hands." *Id.* p. 64 (dep. ex. 5). Mr. Taylor did

9

not dispute that his job required repetitive gripping, so he could not have performed his job within those restrictions, either.

Those restrictions were in effect until Mr. Taylor underwent carpal tunnel surgery on his left hand in January 2016, after which his doctor restricted him to being "Off work." *Id.* p. 65 (dep. ex. 6). Plainly, Mr. Taylor could not perform the essential functions of his job when he was off work. In March 2016, Mr. Taylor's doctor wrote that he could return to work effective March 28, 2016, which prompted a fit-for-duty evaluation. After that evaluation, however, Mr. Taylor was restricted to "No work with arms at shoulder height or above" and no lifting, pushing, or pulling greater than 20 pounds. *Id.* p. 70 (dep. ex. 10). Mr. Taylor never disputed that his job required work at shoulder height or above. And again, his testimony that he believed he could do his job referred only to the restrictions imposed on October 19, 2015, which did not include a restriction in that respect, so that testimony is not responsive to whether he could have done his job at this time.

In May 2016, Mr. Taylor underwent surgery on his left shoulder, after which he was restricted to "no work with left arm." *Id.* p. 71 (dep. ex. 11). As already noted, Mr. Taylor does not argue that he could have performed his job with only one arm, so he was not a qualified individual at this point, either. In July 2016, Mr. Taylor's restrictions were modified to no lifting more than 20 pounds and no overhead work, *id.* p. 31, before he underwent surgery on August 11, 2016 on his right shoulder., *id.* p. 39. After that he was restricted to "Off work" for the next month. *Id.* p. 72 (dep. ex. 13). On September 28, 2016, Mr. Taylor's restrictions became "no lifting greater than 20 pounds and no overhead work," *id.* p. 42, which were modified slightly the following month to "no overhead work [with his] right arm and no lifting more than 20 lbs," *id.* p. 73 (dep. ex. 15). Mr. Taylor's brief does not acknowledge the restrictions imposed during

10

those periods or develop an argument that they were consistent with the demands of his job. Nor has he disputed AM General's assertion that he could not work with these restrictions—his statement of genuine disputes also disputed only whether there were *other* jobs Mr. Taylor could have performed in this period. [DE 34-1 p. 11]. As the party responding for a motion for summary judgment, Mr. Taylor has thus failed to show that there is a genuine dispute as to whether he could have performed his job with the various restrictions imposed over this time period. And when he was finally cleared to return to regular work in November 2016, Mr. Taylor returned to work. Thus, he has not shown that he suffered an adverse action during a time that he was able to perform the essential functions of his position.

Mr. Taylor also argues that he could have done his job even with a lifting restriction, based on his testimony that his job did not require lifting over 20 pounds. It is arguable whether he has created a *genuine* issue of material fact on that question, as the reason Mr. Taylor gave for that belief was that a lift assist was available for heavy lifting, but he also testified that using the lift assist would cause him to fall behind. [DE 34-2 p. 13 ("Q. Why do you think you could have done that job? A. Because of the availability of the lift assist to . . . move the parts around."); DE 32-4 p. 8 (noting that "they did have a lift assist there that you could use for the paint buckets, but if you did that, you would fall behind")]. But as just discussed, Mr. Taylor's restrictions were never limited solely to the lifting restriction; they included a variety of others, including that Mr. Taylor was off work, could not use both arms, could not grip, or could not work above the shoulders. Mr. Taylor has not addressed those other restrictions or shown how he could have done the paint, dip, and bake utility position even with those various restrictions in place. Accordingly, the Court concludes that Mr. Taylor has failed to identity evidence from which a jury could find that he was a qualified individual during the period at issue. And if Mr. Taylor

cannot show that he was a qualified individual, he cannot prevail on his claim for disability discrimination, so the Court grants summary judgment on that claim.

**C.     Retaliation**

Mr. Taylor finally claims that AM General retaliated against him for filing a charge of disability and age discrimination with the EEOC, in violation of the ADA and the ADEA. Retaliation claims under the ADA and the ADEA are analyzed using the same standard. On both claims, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse action; and (3) there exists a causal connection between the protected activity and the adverse action. *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2010). Mr. Taylor's ADA and ADEA retaliation claims can be analyzed together, as they are both based on the same protected activity: Mr. Taylor's charge of discrimination. There is no dispute that his filing of that charge constituted protected activity, or that having to remain off work constituted an adverse action. The question is therefore whether a reasonable jury could find, based on the evidence as a whole, that the protected activity caused the adverse action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Mr. Taylor first relies on suspicious timing to support an inference of causation. *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) ("Suspicious timing, together with other facts, can sometimes raise an inference of a causal connection."). The problem with this theory, however, is that the timing is backwards: Mr. Taylor's EEOC charge came after AM General decided not to return him to work with his restrictions. Mr. Taylor notes that his doctor cleared him of restrictions on March 28, 2016, but that he was not allowed to return to work because new restrictions were imposed on April 4 and 5, 2016. Mr. Taylor did not file his EEOC charge until April 14, 2016, though. Mr. Taylor argues that he could have returned to work after his surgery in May, but he has not shown that his restrictions at that time were materially

different from his restrictions before his EEOC charge. Also, the policy to which Mr. Taylor objects went into effect in November 2015, well before his protected activity. Mr. Taylor's theory, then, is essentially that AM General failed to remedy its mistreatment of him after he complained about discrimination. Even if so, that does not suggest that AM General's conduct was retaliatory for Mr. Taylor's complaint as opposed to a continuation of the previous conduct of which he complained. In other words, Mr. Taylor has not shown that AM General would have returned him to work notwithstanding his restrictions had he not filed his EEOC charge.

The only other fact Mr. Taylor relies on is that AM General prohibited him from visiting the union office at its facility while he was off work due to his restrictions. Again, however, he fails to show how that has any connection to his complaint of discrimination. Mr. Taylor testified he was told that "people on restrictions" weren't allowed in the plant, not that people who had filed EEOC charges were not allowed. [DE 34-2 p. 28; *see also* p. 17 ("[T]hey threw everybody out the door that were on restrictions or had any kind of restrictions, they refused to allow them to come into the plant anymore . . . .")]. Whether that decision was right or wrong, Mr. Taylor hasn't shown that it had anything to do with the fact that he filed an EEOC charge. Mr. Taylor thus has not identified any evidence from which a jury could find that his filing of an EEOC charge caused any adverse action. Therefore, the Court grants the motion for summary judgment on Mr. Taylor's retaliation claims.

## IV.  CONCLUSION

The Court GRANTS AM General's motion for summary judgment. [DE 31]. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED: March 16, 2020

                                          /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court